UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Lori Chandler,

       Plaintiff,

       v.                          Civil Action No. 5:12-CV-155

Commissioner of Social Security,

       Defendant.

## REPORT AND RECOMMENDATION
(Docs. 12, 22)

     Plaintiff Lori Chandler brings this action pursuant to 42 U.S.C. § 405(g) of the

Social Security Act, requesting review and remand of the decision of the Commissioner

of Social Security ("Commissioner") denying her application for disability insurance

benefits. Pending before the Court are Chandler's motion to reverse the Commissioner's

decision (Doc. 12), and the Commissioner's motion to affirm the same (Doc. 22). For the

reasons stated below, I recommend that Chandler's motion be GRANTED, in part; the

Commissioner's motion be DENIED; and the matter be REMANDED for further

proceedings and a new decision.

## Background

     Chandler was forty-six years old on her alleged disability onset date of

August 1, 2007. She graduated from high school in 1980, and thereafter served in the Air

Force for eight years and in the Vermont Air National Guard for another four years. (AR

32, 144, 184, 396, 646.)  She has experience working as a home health aide, a licensed nursing assistant, and a potter.  (AR 32-33, 180, 200.)

Chandler has eight brothers and sisters.  (AR 395, 646.)  Her mother died of cancer when she was six years old, and for the next several years, Chandler's father raised her and her siblings on his own.  (*Id.*)  Thereafter, her father married a woman who became Chandler's stepmother.  (*Id.*)  That woman died when Chandler was twenty-one years old.  (*Id.*)  Chandler never married or had children.  (AR 145.)  She had a close relationship with her father, and was his primary caregiver in the years prior to his death in June 2009.  (AR 541, 647.)  Her father's death had a significant emotional impact on Chandler (AR 207, 541-42, 646-47), and she identified her onset of depression as occurring when her father died, stating to a counselor: "A huge chunk of my life went away when [my] dad died" (AR 542).

On the date of the administrative hearing, Chandler was living in a trailer with her boyfriend, a disabled alcoholic who she reported was verbally and mentally abusive toward her.  (AR 47, 221, 541, 646.)  She stated at the administrative hearing that she was being tutored in math and computers so she could take community college courses at CCV in Middlebury.  (AR 50.)  On a typical day, Chandler cares for her boyfriend, feeds and walks her dog, prepares simple meals for herself and her boyfriend, does housework, naps, watches television, goes food shopping, and goes to doctor appointments.  (AR 203-07, 219-23, 226, 647.)  She has no interests in activities and no social life other than seeing her siblings every two years at family reunions.  (AR 646.)

On July 29, 2009, Chandler protectively filed an application for disability insurance benefits. Therein, she alleged that, starting on August 1, 2007, she has been unable to work due to an injured back, fibromyalgia, irritable bowel syndrome, and tendinitis in her arms. (AR 179.) She added that she is "in constant pain" and is able to stand for only "about 15-20 min[utes] at a time," and is "not supposed to lift much more than 10 lbs." (*Id.*) At the administrative hearing, Chandler testified that she has had fibromyalgia for over thirty years. (AR 33.) She further testified that, on August 1, 2007, her alleged disability onset date, she slipped at her home and injured her back, exacerbating her fibromyalgia and causing "unbearable pain." (*Id.*) As a result, she claims she is unable to do much of anything except sleep, although she cannot even do that adequately because she reports having chronic insomnia and sleep apnea, waking every two hours at night. (AR 34.) Chandler also testified that she has chronic depression, a skin irritation, back pain, and acid reflux. (*Id.*) She stated that she has constant pain in her upper arms, neck, lower back, legs, hips, and right knee. (AR 36-37.) Given this pain, she testified that she cannot stand for more than ten minutes at a time, can sit in a comfortable chair for only about one hour at a time, and needs to lay down often. (AR 37-38.)

Chandler's application was denied initially and upon reconsideration, and she timely requested an administrative hearing. The hearing was conducted on July 15, 2011 by Administrative Law Judge ("ALJ") Thomas Merrill. (AR 27-64.) Chandler appeared and testified, and was represented by an attorney. A vocational expert ("VE") also testified at the hearing. (AR 52-63.) On August 17, 2011, the ALJ issued a decision

finding that Chandler was not disabled under the Social Security Act from her alleged onset date of August 1, 2007 through the date of the decision.  (AR 13-21.)  Thereafter, the Appeals Council denied Chandler's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (AR 1-3.)  Having exhausted her administrative remedies, Chandler filed the Complaint in this action on July 9, 2012.  (Doc. 3.)

## ALJ Decision

The Commissioner uses a five-step sequential process to evaluate disability claims.  *See Butts v. Barnhart*, 388 F.3d 377, 380-81 (2d Cir. 2004).  The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment."  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether the claimant's impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings").  20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if the impairment meets or equals a listed impairment.  *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's residual functional capacity ("RFC"), which means the most the claimant can still do despite his or her mental and physical limitations based on all the relevant medical and other evidence in the record.  20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1).  The fourth step requires the ALJ to consider whether the

claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

Employing this sequential analysis, ALJ Merrill first determined that Chandler had not engaged in substantial gainful activity since her alleged onset date of August 1, 2007. (AR 16.) At step two, the ALJ found that Chandler had the severe impairment of "myofascial pain syndrome" (*id.*), which is "a chronic pain disorder [involving] pressure on sensitive points in [a person's] muscles (trigger points) caus[ing] pain in seemingly unrelated parts of [the] body," Mayo Clinic Staff, *Definition of Myofascial Pain Syndrome*, MAYO CLINIC, Jan. 5, 2012, http://www.mayoclinic.com/health/ myofascial-pain-syndrome/DS01042 (last visited Apr. 9, 2013). Conversely, the ALJ found that Chandler's sleep apnea, tendonitis/shoulder pain, back pain, fibromyalgia, depression, and anxiety were non-severe. (AR 16-17.) At step three, the ALJ found that none of Chandler's impairments, alone or in combination, met or medically equaled a listed impairment. (AR 17-18.) Next, the ALJ determined that Chandler had the RFC to perform the full range of light work, as defined in 20 C.F.R. § 404.1567(b). (AR 18.)

Given this RFC, and relying on the VE's testimony, the ALJ found that Chandler was unable to perform any of her past relevant work, which was "medium exertionally and semi-skilled in nature." (AR 20.) Finally, again based on testimony from the VE, the ALJ determined that Chandler could do other jobs existing in significant numbers in the national economy, including fast food worker, cashier, cashier/grocery store worker, sales attendant, and sales clerk. (*Id.*) The ALJ concluded that Chandler had not been under a disability from her alleged onset date through the date of the decision. (AR 21.)

## Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person will be found disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In considering a Commissioner's disability decision, the court "review[s] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). The court's factual review of

the Commissioner's decision is thus limited to determining whether "substantial evidence" exists in the record to support such decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the fact[-]finder."). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Poupore*, 566 F.3d at 305. In its deliberations, the court should bear in mind that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

<u>Analysis</u>

I.      **Step-Two Severity Determination**

As noted above, at step two of the sequential evaluation, the ALJ determined that, although Chandler's myofascial pain syndrome constituted a "severe impairment," her sleep apnea, tendonitis/shoulder pain, back pain, fibromyalgia, depression, and anxiety did not. (AR 16-17.) The ALJ stated:

> [Chandler] alleges disability due to injured back, fibromyalgia, irritable bowel syndrome[,] and tendonitis. The objective medical evidence of record also shows diagnoses of obesity . . . , sleep apnea, chronic insomnia, restless leg syndrome, chronic fatigue, upper and lower chronic back pain, right forearm laceration, Vitamin D deficiency, neurodermatitis, shingles, sinusitis, very mild renal cortical thinning, dyslipidemia, hyperlipidemia, and gastroesophageal reflux disease. *Of these impairments[,] the objective medical evidence of record supports only the myofascial pain syndrome as causing significant limitations in [Chandler's] ability to perform one or*

*more basic work activities*; and, therefore, is [the only] severe impairment under the [Social Security] Act.[1]

(AR 16 (citations omitted).)  Chandler asserts that the ALJ erred in finding that her fibromyalgia and depression were not severe impairments.

The regulations define a "severe" impairment as one "which significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c); *Meadors v. Astrue*, 370 F. App'x 179, 182 (2d Cir. 2010).  The Second Circuit has held that the ALJ's step two severity analysis "may do no more than screen out *de minimis* claims."  *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995).  The Social Security Administration has described the claimant's burden of demonstrating a "severe" impairment as follows:

> [A]t the second step of [the] sequential evaluation it must be determined whether medical evidence establishes an impairment or combination of impairments "of such severity" as to be the basis of a finding of inability to engage in any [substantial gainful work].  An impairment or combination of impairments is found "not severe" and a finding of "not disabled" is made at this step when medical evidence establishes *only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work* even if the individual's age, education, or work experience were specifically considered (i.e., the person's impairment(s) has *no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities*).

SSR 85-28, 1985 WL 56856, at *3 (1985) (emphases added).

---

[1]  Although not addressed in Chandler's motion, it is curious that the ALJ determined, without explanation, that Chandler had the severe impairment of myofascial pain syndrome but not fibromyalgia, when the treatment record contains many references to fibromyalgia and very few to myofascial pain syndrome.  (*See, e.g.*, AR 277, 279, 283, 351, 354, 434, 436, 646, 687.)

## A.    Fibromyalgia

The principal reasoning provided by the ALJ in support of his determination that Chandler's fibromyalgia was not a severe impairment is that: (a) "[t]here was no notation of the requisite tender points to support the [fibromyalgia] diagnosis" contained in the treatment notes of Chandler's treating primary care physician, Dr. Scott Smith; and (b) the treatment notes of family nurse practitioner Alison Parker, who was affiliated with Dr. Smith's practice, did not contain "findings" supportive of the fibromyalgia diagnosis. (AR 16.)  This analysis is factually inaccurate, and omits relevant evidence.  The records cited by the ALJ himself include October 20, 2009 treatment notes from Nurse Parker which state under "EXAM:" and "Musculo/skeletal:" "18/18 fibromyalgia pressure [points] tender" and under "[Assessment/Plan]:" "Fibromyalgia mod[erate]-severe."  (AR 434.)  In his July 2011 opinion, Dr. Smith affirmed that clinical finding by listing "Fibromyalgia" as one of Chandler's diagnoses and stating that this diagnosis was based in part on "clinical exam."  (AR 695.)  Other medical records—not specifically discussed in the ALJ's decision—support the fibromyalgia diagnosis, indicating that Chandler exhibited objective fibromyalgia symptoms, including tightness and tenderness with palpation in the shoulder and back muscles, and positive muscle spasms and trigger points.  (*See, e.g.*, AR 432, 511-12.)

Confusingly, after discrediting Dr. Smith's and Nurse Parker's respective opinions that Chandler had fibromyalgia on the grounds that their treatment notes did not contain findings demonstrating fibromyalgia, the ALJ discusses the December 2009 report of consultative examiner Dr. Richard Morrison, and states as follows: "[Chandler] reported

a history of fibromyalgia for 30 years. She responded positively to 18 out of 18 tender points." (AR 16 (citation omitted).) In fact, Dr. Morrison's report states as follows: "[Chandler *has an evaluation* for trigger points in the neck, shoulders, arms, and back[,] and *18/18 were elicited*." (AR 422 (emphases added).) Although not completely clear, the "evaluation" referred to by Dr. Morrison appears to be the October 20, 2009 examination notes of Nurse Parker, who treated Chandler on an ongoing basis, in contrast to Dr. Morrison who examined her on only one occasion. As stated above, these notes reflect Nurse Parker's finding of "18/18 [tender] fibromyalgia pressure [points]" (AR 434), which was later adopted by treating physician Dr. Smith (AR 695). The ALJ does not seem to recognize that Dr. Morrison's statement that Chandler had 18/18 fibromyalgia tender points was likely based on the treatment notes of Nurse Parker and not on his own examination findings.

Another rationale provided by the ALJ in support of his determination that Chandler's fibromyalgia was not a severe impairment is that agency consultants Drs. H.C. Faigel and Geoffrey Knisely "did not diagnose [Chandler] with fibromyalgia." (AR 17.) But one of the medical reports cited by the ALJ in support of this rationale (*see id.* (citing Ex. 12F)) is a "Psychiatric Review Technique" report which is used to evaluate mental impairments, not physical impairments like fibromyalgia (*see* AR 554-67). Thus it is no surprise that there is no fibromyalgia diagnosis contained therein (although the report does note that Chandler "allege[d] . . . fibromyalgia," and more specifically, that she "complain[ed] she had fibromyalgia for the last 25 to 30 years") (AR 566). Moreover, Dr. Faigel's report actually includes reference to "18/18 positive trigger

points" and "a history of variable muscle pains due to fibromyalgia" (AR 547), thus accepting Chandler's fibromyalgia diagnosis. Furthermore, Drs. Faigel and Knisely are non-examining agency consultants, and the regulations do not contemplate that the opinions of non-examining physicians be treated as substantial evidence. *See* 20 C.F.R. § 404.1527(d)(1); *Filocomo v. Chater*, 944 F. Supp. 165, 170 n.4 (E.D.N.Y. 1996) ("[T]he conclusions of a physician who merely reviews a medical file and performs no examination are entitled to little, if any, weight."). The Second Circuit has cautioned that ALJs should not rely heavily on the findings of consultative physicians who conduct only a single examination. *Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013) (citing *Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990)). Here, neither Dr. Faigel nor Dr. Knisely conducted even a single examination of Chandler.

The ALJ also made multiple errors citing to the record at step two of his sequential evaluation. First, citing to Exhibits 9F, 13F, and 23F, the ALJ stated (as discussed above): "There was no notation of the requisite tender points to support the [fibromyalgia] diagnosis." (AR 16.) In fact, Exhibit 9F contains page 434 of the administrative record, which includes Nurse Parker's notation: "18/18 fibromyalgia pressure points." (AR 434.) Second, the ALJ cited Exhibit 25F (AR 695-98) when discussing Dr. Morrison's consultative examination report, but that report is found at Exhibit 7F (AR 420-25). Third, the ALJ cited Exhibit 12F in reference to Dr. Faigel's

report, discussed above, but Exhibit 12F is actually the report of Dr. William Farrell not Dr. Faigel.[2]  (*See* AR 17, 554-67.)

Also troubling, although the ALJ briefly summarized portions of Dr. Smith's treatment notes as part of his step-two discussion of Chandler's fibromyalgia, the ALJ failed to acknowledge or assess Dr. Smith's July 2011 "Treating Physician Medical Source Statement" ("MSS"), which, as stated above, lists fibromyalgia as one of Chandler's diagnoses and states that this diagnosis was based in part on "clinical exam." (AR 695.)  In the MSS, Dr. Smith opines that Chandler suffered from fibromyalgia, along with other conditions, and that Chandler was severely limited in her ability to function physically.  (AR 695-97.)  Specifically, Dr. Smith states that Chandler could lift only one-to-five pounds on a frequent basis and five-to-ten pounds on an occasional basis; stand/walk for only ten minutes at a time and sixty minutes total in an eight-hour day; and sit for only ten minutes at a time and ninety minutes total in an eight-hour day.  (AR 696.) Dr. Smith further states that Chandler needed to lie down for six hours out of an eight-hour day to relieve pain and fatigue.  (AR 697.)

Dr. Smith was Chandler's treating physician for approximately two years prior to her alleged disability onset date and for over one year after.  He had a treatment relationship with Chandler.  Thus, the ALJ should have analyzed and decided what weight to afford Dr. Smith's opinion regarding the limiting effects of Chandler's fibromyalgia before determining that Chandler's fibromyalgia was not a severe

---

[2]  Dr. Faigel's report, Exhibit 11F, is titled "Physical Residual Functional Capacity Assessment" and is located at AR 546-53.

impairment. *See Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (opinion of treating physician on nature or severity of claimant's impairments is binding if supported by medical evidence and not contradicted by substantial evidence); *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2d Cir. 2003) (ALJ erred in not giving treating physician's diagnosis of fibromyalgia controlling weight); 20 C.F.R. § 404.1527(c)(2) (treating physicians offer a "unique perspective to the medical evidence" that cannot otherwise be obtained from the record). If the ALJ determined that Dr. Smith's opinion regarding Chandler's fibromyalgia was not deserving of controlling weight, the ALJ should have considered the regulatory factors and provided "good reasons" for affording little weight to the opinion. *See* 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (failure to provide "good reasons" for not crediting the opinion of a treating physician is grounds for remand). Although the ALJ analyzed Dr. Smith's opinion in more detail later in his decision, he should have stated in the context of his severity analysis why he opted to find that Chandler's fibromyalgia did not constitute a severe impairment despite Dr. Smith's opinion to the contrary.

Furthermore, the ALJ's later analysis of Dr. Smith's opinion is flawed. In the context of his RFC determination and credibility assessment, the ALJ stated as follows: "Based on the above testimony [of Chandler], and the medical record as a whole, I give little weight to the opinions of Scott Smith, MD." (AR 19.) Thus the ALJ's decision to afford little weight to Dr. Scott's opinion was partially based on Chandler's testimony at

the administrative hearing. The ALJ's description of that testimony, however, which is contained in the paragraph preceding his analysis of Dr. Smith's opinion, is replete with factual errors. (*Id.*) One or two factual inaccuracies may amount to harmless error, but here, the ALJ made numerous factual errors, all of which—taken together—require remand. Several of the ALJ's factual errors are discussed above. Additional errors include:

- The ALJ stated that Chandler "drives half an hour to a ferry" for her shopping trips to Walmart. (AR 19.) In fact, Chandler testified that she drove only twenty minutes to the ferry.[3] (AR 49.)

- The ALJ stated that Chandler "drove an hour to [the administrative] hearing." (AR 19.) In fact, Chandler testified that her attorney drove her to the hearing.[4] (AR 49.)

- The ALJ stated that Chandler "attends college." (AR 19.) In fact, Chandler testified that she was being tutored in math and computers so she could take community college courses at CCV in Middlebury. (AR 50.)

---

[3] To be precise, Chandler testified that she sometimes went to Wal-Mart with her boyfriend, which entailed driving twenty minutes to the ferry, riding the ferry for ten minutes, shopping at the store, and then returning home via the ferry and her car. (AR 48-49.) Given the long duration of the entire trip, it makes little substantive difference whether the ride to the ferry was twenty or thirty minutes, but the ALJ's error compounds the appearance that the ALJ did not effectively hear or understand Chandler's testimony at the administrative hearing and thus was unaware of the correct facts.

[4] Despite the ALJ's error, the record does demonstrate that Chandler was able to drive. (AR 47-49.) For example, she testified that she drove to and from the grocery store, which she stated "takes a while," approximately once a month. (AR 47.) She also testified that she drove herself and her boyfriend to medical appointments. (AR 48; *see also* AR 541, 598, 601.) But again, even if this particular factual error makes little substantive difference, it suggests that the ALJ was unaware of the correct facts.

- The ALJ stated that Chandler had "no problem paying attention for . . . three-hour block[s] [of time]." (AR 19.) In fact, Chandler testified that she met with a math tutor for two-to-three hours twice a week (AR 50-51), and was able to pay attention for "probably an hour," at which time she needed to take a break because her "mind g[ot] boggled" and she "los[t] concentration" and "g[ot] all messed up" and "frustrated" (AR 51).

Given these factual errors, as well as the ALJ's failure to properly analyze the opinions of treating providers Dr. Smith and Nurse Parker and non-examining consultants Drs. Faigel and Knisely regarding Chandler's fibromyalgia, I recommend remanding for a reassessment of whether Chandler's fibromyalgia was a severe impairment. Although the "mere diagnosis of fibromyalgia without a finding as to the severity of symptoms and limitations does not mandate a finding of disability," *Rivers v. Astrue*, 280 F. App'x 20, 22 (2d Cir. 2008) (quoting *Green-Younger*, 335 F.3d at 108) (citation omitted); the ALJ should have completed a legally proper and factually correct analysis at step two to determine if the impairment was severe, *see Selian v. Astrue*, 708 F.3d 409, 418-19 (2d Cir. 2013).

### B. Depression

The ALJ also erred in his step-two determination that Chandler's depression was not a severe impairment. This decision was based on two principal reasons: (a) the ALJ gave "very limited weight" to the opinions of Chandler's "mental health providers"; and (b) the ALJ found that the "preponderance of the objective medical evidence," including

the reports of consulting physicians Drs. Farrell and Oxidine, supported a finding of no severe mental health impairment. (AR 17.)

In analyzing Chandler's depression, the ALJ first discussed the report of non-examining agency psychologist, Thomas Reilly, Ph.D. (AR 17.) In July 2010, Dr. Reilly opined that Chandler had the medically determinable impairment of "depressive disorder," and that the disorder caused moderate difficulties in concentration, persistence, or pace; moderate limitations in maintaining attention and concentration for extended periods; and moderate limitations in the ability to complete a normal workday and workweek without interruptions and to perform at a consistent pace without an unreasonable number and length of rest periods. (AR 654, 661, 665-66.) Dr. Reilly concluded that Chandler would experience "some episodic disruption to concentration and pace during periods of increasing situational stresses and the additional burden of pain on mental alacrity." (AR 667.)

The ALJ analyzed Dr. Reilly's opinion as follows:

> Thomas Reilly, PhD, a nonexamining agency program psychologist assessed a severe condition of depression; noting moderate impairment in concentration, pace[,] and persistence. This opinion was based upon the evaluation of a mental health counselor, who estimated a GAF[5] of 50, noted complication of depression by grief, and that [Chandler's] symptoms may be due to situational factors.

---

[5] "The GAF is a scale promulgated by the American Psychiatric Association to assist 'in tracking the clinical progress of individuals [with psychological problems] in global terms.'" *Kohler v. Astrue*, 546 F.3d at 262 n.1 (2d Cir. 2008) (quoting Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), at 32 (4th ed. 2000)). A score of "41-50" indicates "[s]erious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupation, or school functioning (e.g., no friends, unable to keep a job)." *Id.*

(AR 17 (citing AR 645-68).)  The ALJ then stated that he gave "very limited weight" to Dr. Reilly's opinion because "the [GAF] estimates are subjective, most rendered after only one evaluation, and they are only generally estimates" that "do not offer any guidance as to specific limitations."  (AR 17.)  The ALJ cited this Court's holding in *Parker v. Commissioner*, Civil Action No. 2:10-CV-195, 2011 WL 1838981 (D. Vt. May 13, 2011) (Conroy, Mag. J.), to support this assertion, parenthetically noting that *Parker* held there was "no authority requiring an ALJ to put stock in a GAF score."  (AR 17.)

More precisely, *Parker* held that, although a low GAF score may constitute evidence of severe limitations of daily functioning, it is only "one factor" to consider in determining a claimant's ability to perform substantial gainful activity.  *Parker*, 2011 WL 1838981 at *6.  In that case, the ALJ failed to mention multiple GAF scores.  This case is different: the ALJ discussed Chandler's GAF scores, but inconsistently attributed significant weight to one score while attributing little weight to another, without explaining why.  (AR 17.)  Specifically, as discussed above, the ALJ gave very little weight to Dr. Reilly's opinion because it was based on the evaluation of examining consultant Licensed Mental Health Counselor Rhonda Foley, who estimated a GAF of 50.  (*Id.* (citing AR 645-50).)  Yet the ALJ then proceeded to adopt the findings of non-examining agency consultant Dr. Farrell and examining consultant Shirley Oxidine, Psy.D, that Chandler had a GAF of 60, explaining that "[t]his score is not indicative of significant limitations in the ability to perform one or more basic work activities."  (AR 17 (citing AR 540-45, 554-67).)  Stated differently, on the one hand, the ALJ discredited Dr. Reilly's opinion that Chandler's depression was a medically determinable impairment

causing limitations in mental functioning for the reason that the opinion was based on a relatively low GAF score (50) and GAF scores are unreliable. On the other hand, the ALJ credited Dr. Farrell's opinion that Chandler's depression was not a severe impairment for the reason that the opinion was based on Dr. Oxidine's assignment of a GAF score of 60, which score the ALJ explained "is not indicative of significant limitations in the ability to perform one or more basic work activities." (*Id.*) Thus the ALJ inconsistently applied the applicable law, which simply holds that a claimant's GAF score is not dispositive of her ability to work but is "one factor" for the ALJ to consider in determining whether the claimant is disabled. *Mortensen v. Astrue*, Civil No. 10-4976 (JRT/JJG), 2011 WL 7478305, at *9 (D. Minn. Sept. 30, 2011) (Mag. J.), *R&R adopted in* 2012 WL 811510 (D. Minn. Mar. 12, 2012) (citing *Dukes v. Barnhart*, 436 F.3d 923, 928 (8th Cir. 2006)); *see also Parker*, 2011 WL 1838981 at *6.

The ALJ also erred in his analysis of the severity of Chandler's depression by failing to discuss the June 2010 assessment of examining mental health counselor Foley, other than to state that Dr. Reilly based his opinion on Foley's evaluation and estimation of a GAF score of 50. (AR 17.) After examining Chandler, Foley assessed that Chandler had only a fair ability to concentrate, fair insight, and poor judgment. (AR 645.) Noting that Chandler's fibromyalgia and depression "seem[ed] to be worsened and complicated by the grieving process following her father's death approximately one year ago," Foley opined as follows: "It is unclear whether [Chandler's] symptoms . . . are due to situational factors . . . or specifically symptoms of a Major Depressive Disorder. It will take some

additional time and assessment to diagnose with certainty. Nevertheless, [Chandler's] prognosis is poor for the near future." (AR 648.)

Although the ALJ was entitled to rely more heavily on the opinions of consultants Dr. Farrell and Dr. Oxidine than on those of counselor Foley in determining that Chandler's depression was not a severe impairment, he should have first explained his decision to reject consultant Foley's opinion to the contrary, especially considering that Foley (and Dr. Oxidine) examined Chandler whereas Dr. Farrell did not. While the ALJ need not explicitly "reconcile every conflicting shred of medical testimony," *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981), "'the crucial factors in any determination must be set forth with sufficient specificity to enable [the reviewing court] to decide whether the determination is supported by substantial evidence.'" *Calzada v. Astrue*, 753 F. Supp. 2d 250, 269 (S.D.N.Y. 2010) (quoting *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984)). An ALJ may discount relevant evidence in the record, but must give good reasons for doing so. *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010). Here, the ALJ failed to give good reasons for affording "very limited weight" to the opinions of "mental health providers" while affording significant weight to others. (AR 17.)

Like a diagnosis of fibromyalgia, a diagnosis of depression, without more, does not suggest that the claimant's depression imposes significant restrictions on the claimant's ability to perform basic work activities. *See Torres v. Astrue*, 550 F. Supp. 2d 404, 411 (W.D.N.Y. 2008). But here, the ALJ erred in basing his step-two decision that Chandler's depression was non-severe on an inconsistent application of the applicable law regarding GAF scores and on an insufficiently-explained decision to afford limited

weight to certain mental health provider opinions while affording significant weight to others. I therefore recommend remanding for a reassessment of whether Chandler's depression was a severe impairment.

###    C.    Harmless Error Analysis

An ALJ's failure to make an explicit finding of a step-two impairment where substantial evidence supports the presence thereof, does not in and of itself require remand. *See Reices-Colon v. Astrue*, No. 12-2013, 2013 WL 1831669, at *1 (2d Cir. May 2, 2013) (unpublished) (finding alleged step-two error harmless because ALJ considered impairments during subsequent steps); *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003). However, where the omitted impairment was not accounted for in the ALJ's RFC determination, or in other words, where the ALJ's step-two error prejudiced the claimant at later steps in the sequential evaluation process, remand is required. *See, e.g.*, *Elliott v. Comm'r of Soc. Sec.*, Civil No. 09-1195-HA, 2011 WL 1299623, at *4 (D. Or. Mar. 31, 2011) ("The general proposition that failures at step two may be harmless *if the ALJ discusses the impairments and assesses limitations as a result of that impairment*, . . . underscores the significance of the error in this case—the ALJ failed to adequately discuss the impairments at issue, and a determination as to whether plaintiff's limitations were fully assessed in connection with these impairments is impossible to ascertain.") (emphasis added); *Hamilton v. Astrue*, No. 09-CV-1199 (FJS/VEB), 2012 WL 7682462, at *6 (N.D.N.Y. Mar. 29, 2012) (ALJ's step-two error not harmless where there was "no indication in the decision that the ALJ considered the impact of Plaintiff's carpal tunnel syndrome on his ability to perform work-related

functions"); *Stanton v. Astrue*, 370 F. App'x 231, 233 (2d Cir. 2010) (noting in dicta that ALJ did not err in finding disc herniation non-severe because ALJ identified other severe claims at step two so the claim proceeded though the sequential evaluation and all impairments were considered in combination).

Here, the ALJ's decision reflects that, in determining Chandler had the RFC to perform "the full range of light work" (AR 18), the ALJ did not consider the symptoms of either Chandler's fibromyalgia or her depression. Further, in determining Chandler's RFC, the ALJ did not account for Dr. Reilly's and counselor Foley's respective assessments that Chandler had concentration, persistence, and pace limitations. Therefore, the ALJ's step-two errors were not harmless, and the matter should be remanded for a new decision starting at step two.

## II. Credibility Assessment

Chandler also argues that the ALJ erred in determining that she was not entirely credible. (AR 19.) There are portions of the record which support the ALJ's credibility determination. (*See, e.g.*, AR 423 (consulting examiner Dr. Morrison observing that Chandler walked very slowly to her truck and with a limp, but got into the truck, which was "quite high," "with no difficulty"); AR 540 (consulting examiner Dr. Oxidine stating that Chandler "should be considered a questionable historian" because she had inconsistently described her pain as well as the cause of her medical problems).) But the ALJ's multiple factual errors (stated above), collectively, are substantial, and likely tainted his credibility assessment. Therefore, on remand, the ALJ should reassess Chandler's credibility.

### III. Reversal for Calculation of Benefits

Chandler asserts that, instead of remanding this case for further proceedings, the Court should reverse and remand solely for a calculation of benefits. The only rationale provided by Chandler for this assertion is that: "the testimony of the [VE] and the substantial evidence . . . demonstrates [Chandler's] depression is a severe impairment that results in episodic concentration and pace limitations which preclude all work." (Doc. 12 at 25.)

In cases where there is "no apparent basis to conclude that a more complete record might support the Commissioner's decision," reversal for a calculation of benefits may be appropriate. *Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999). Where, however, there are gaps in the administrative record or the ALJ has applied an improper legal standard, it is more appropriate to remand for further proceedings and a new decision. *Id.* at 82-83. Here, after applying the proper legal standard and correcting the ALJ's factual errors, an ALJ may still find that there are jobs existing in significant numbers in the national economy that Chandler could perform. In that event, an award of benefits would not be warranted. Thus, Chandler's request that the matter be reversed and remanded solely for a calculation of benefits should be denied. *See Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) ("Remand [for further proceedings] is particularly appropriate where . . . we are 'unable to fathom the ALJ's rationale in relation to the evidence in the record' without 'further findings or clearer explanation for the decision.'") (quoting *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982)).

**IV.  Remand to a Different ALJ**

Finally, Chandler asks that this case be remanded to an ALJ other than ALJ

Merrill, "who will consider and adjudicate the claim pursuant to SSA's rules and

regulations."  (Doc. 12 at 25.)

Typically, courts in this Circuit refrain from directing the Commissioner to assign

a different ALJ on remand, *McDowell v. Colvin*, No. 11-CV-1132 (NAM/VEB), 2013

WL 1337152, at *15 (N.D.N.Y. Mar. 11, 2013), as the decision to reassign a case to a

different ALJ is generally reserved for the Commissioner, *Dellacamera v. Astrue*, No.

3:09 CV 1175(JBA), 2009 WL 3766062, at *1 (D. Conn. Nov. 5, 2009) (citing *Travis v.*

*Sullivan*, 985 F.2d 919, 924 (7th Cir. 1993)).  Nonetheless, in certain circumstances,

courts—including the Second Circuit—have issued remand orders directing the

assignment of a new ALJ.  *See, e.g.*, *Ventura v. Shalala*, 55 F.3d 900, 905 (3d Cir. 1995)

(ALJ engaged in "offensive and unprofessional" conduct at administrative hearing,

including coercive, intimidating, and totally irrelevant questioning of claimant);

*Kolodnay v. Schweiker*, 680 F.2d 878, 880-81 (2d Cir. 1982) (ALJ failed to adequately

consider medical evidence); *Ocasio v. Barnhart*, No. 00 CV 6277(SJ), 2002 WL 485691,

at *10 (E.D.N.Y. Mar. 28, 2002) (animosity between ALJ and claimant's attorney, and

ALJ lacked sensitivity to claimant's impairments).  When determining if it is appropriate

to remand a case to a new ALJ, courts in this circuit consider whether any of the

following four factors exist:  (1) a clear indication that the ALJ will not apply the

appropriate legal standard on remand; (2) a clearly manifested bias or inappropriate

hostility toward any party; (3) a clearly apparent refusal to consider portions of the

testimony or evidence favorable to a party, due to apparent hostility to that party; [and] (4) a refusal to weigh or consider evidence with impartiality, due to apparent hostility to any party. *Sutherland v. Barnhart*, 322 F. Supp. 2d 282, 292 (E.D.N.Y. 2004); *see Johnson v. Astrue*, Civil No. 3:10-CV-1023 (VLB), 2011 WL 2938074, at *2 (D. Conn. Feb. 15, 2011).

Chandler does not point to any specific conduct of the ALJ, other than his adverse decision, to warrant remand to a different ALJ. Although some errors were made in the ALJ's decision, there is no evidence of bias, hostility, or prejudice. Rather, the administrative transcript demonstrates that the ALJ was courteous and civil to Chandler and her attorney at the hearing. Nor is it clear that the ALJ would not apply the appropriate legal standards, as discussed herein, on remand. Therefore, I recommend declining to order reassignment to a different ALJ on remand, although the Commissioner retains full discretion to make such an assignment if she so chooses. *See Johnson*, 2011 WL 2938074, at *2 (taking no position on which ALJ should be assigned to the case on remand, and noting that (a) there was "no evidence that the ALJ acted due to apparent hostility toward Ms. Johnson"; and (b) "simply failing to adhere to the appropriate legal standard during the first hearing does not clearly indicate that the ALJ would not apply the correct standard on remand"); *Card v. Astrue*, 752 F. Supp. 2d 190, 192-93 (D. Conn. 2010) (finding that plaintiff's admission that ALJ was "uniformly courteous and civil" toward her at the administrative hearing was fatal to her argument) (internal quotation omitted).

## Conclusion

In making these recommendations, I offer no opinion regarding the substantive merits of Chandler's claim that she is disabled under the Social Security Act. I find, however, that the ALJ made multiple factual errors and applied incorrect legal standards in his step-two severity determination, which in turn affected his assessment of Chandler's credibility. I further find that the ALJ's errors were not harmless, as they affected his RFC determination and ultimate conclusion that Chandler was not disabled. Accordingly, I recommend that Chandler's motion (Doc. 12) be GRANTED, in part; the Commissioner's motion (Doc. 22) be DENIED; and the matter be REMANDED for further proceedings and a new decision.

Dated at Burlington, in the District of Vermont, this 16th day of May, 2013.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).